Ramona Ann **SCHIMMEL**, on behalf of herself and all other similarly situated, Plaintiff,

v.

William N. **SLAUGHTER**, et al., Defendants.

No. 3:94–CV–60 (WDO).

United States District Court, M.D. Georgia. Athens Division.

Aug. 12, 1997.

Tony James Foss, Augusta, GA, Barry Gordon Irwin, Athens, GA, for Plaintiff.

H. Clifton Cobb, Atlanta, GA, James Ernest Hudson, Athens, GA, Daniel P. Shapiro,

David Joel Chizewer, Chicago, IL, for Defendants.

## *ORDER*

OWENS, District Judge.

The parties in this class action have filed cross motions for summary judgment on the issue of liability only. The case has been consolidated with two other cases for resolution of that single issue (See Order of August 8, 1996 [Tab #87]). The question before the court is whether the dunning letter sent to plaintiff and the other members of the class violated any provisions of the Fair Debt Collection Practices Act ("the Act"), 15 U.S.C. § 1692 *et seq.* Having carefully considered the arguments of counsel, the relevant statutory and case law and the record as a whole, the court issues the following order.

## *I. Undisputed Facts*

In a letter dated June 25, 1993, defendant Credit Bureau of Athens, Inc. ("CBA"), through its agent defendant William. N. Slaughter, mailed a single letter to first-named plaintiff Schimmel seeking to collect several alleged debts totaling $320.00. Because of its centrality to the case, this letter, which has become known to the parties as "WNS–2" after Slaughter's initials, is reprinted below in full.

1360

WILLIAM N. SLAUGHTER
ATTORNEY AT LAW
1765 OLD WEST BROAD STREET
P.O. BOX 8048
ATHENS, GEORGIA 30603-8048
TELEPHONE: (706) 549-2263

June 25, 1993

RAMONA SCHIMMEL
RTE 2 BOX 3469
NICHOLSON, GA 30565

Re:  Attached list of delinquent accounts
     $320.00

Dear RAMONA:

As attorney for the Credit Bureau of Athens, Inc., this account has been turned over to me for suit purposes.

I have ordered papers for suit.  After judgment is obtained, garnishment can be brought to satisfy judgment.  I shall be forced to proceed with legal action, unless I receive payment in full.

No further notice will be given you and suit will follow after thirty (30) days.  This is your thirty (30) day notice.

Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within thirty (30) days from receiving this notice, this office will:  obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.  If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

This is an attempt to collect a debt and any information obtained will be used for that purpose.

Sincerely,

William N. Slaughter
Attorney at Law

WNS: dls

## (Complaint, Exh. A).

Slaughter is the majority shareholder of CBA with 52% of its stock.  He is also the general manager of the company, and is the sole person in charge of overseeing its day to day operations.  Slaughter's brother owns the other 48% of CBA, but does not take an active role in managing the company, and in fact rarely visits the office.  Slaughter also owns the building in which CBA is housed, and pays himself rent from CBA's account for the lease.

Slaughter manages CBA from an office he maintains within the larger office area of CBA. He does not have a separate office out of which he practices law.  Slaughter is not

listed in the phone book as an attorney at law; he receives phone calls through the CBA switchboard. All correspondence is received at the same address as that listed for CBA. Slaughter does not maintain computer or filing systems separate from those of CBA. Slaughter has no employees other than those who work for CBA. He does not perform any legal work other than the lawsuits he files on behalf of CBA, and perhaps occasional legal work he performs for himself and members of his family. In short, Slaughter's law practice does not exist apart from his debt collection efforts as owner and manager of CBA.

In his deposition, Slaughter explained the process by which the attorney letters were generated. Once initial collection efforts by CBA were unsuccessful, the file was transferred over to what Slaughter terms the "legal department," which essentially consists of a separate computer system operated by CBA employees. The employees then reviewed the file to see which of several form letters should be sent to the debtor under Slaughter's "attorney at law" letterhead.

During the period in question, the employee would review the file according to certain criteria laid out by Slaughter to decide if a WNS–2 letter should be sent. If the employee determined it to be appropriate, he would prepare a WNS–2 letter and bring it, along with a one or two sheet summary of the account, to Slaughter to be signed. The summary accompanying the letter generally contained only basic information such as the name of the debtor and the client to whom the debt was owed, the amount of the debt, the debtor's past and current employment, the debtor's assets, and previous collection efforts made on the account. Based upon this information, Slaughter would determine whether to start the process of filing suit by signing the letter. As soon as the letters were signed, CBA employees would order the papers necessary for filing a lawsuit and request an assignment of the debt from the creditor. The letters were then mailed at CBA's expense. Approximately 30–60 days later, if the debt had not been paid, suit would be filed. In return for sending out these letters and initiating suit, Slaughter

paid himself a monthly fee from CBA's account.

Slaughter claims there were instances where he did not sign an attorney letter presented to him. However, he has not provided any evidence to that effect, and could not recall any of the accounts that were sent back without the letter signed. Slaughter also testified that while he was licensed to practice law, he would not himself act as an attorney at any trial that resulted from the filing of a lawsuit to collect a debt. His policy was to withdraw or substitute other counsel if the debtor went so far as to file an answer (Slaughter depo., Stewart case, at 91). However, he rarely had need to substitute new counsel because the debtors usually defaulted once suit was filed (Slaughter depo., Stewart case, at 92).

After the WNS–2 letter was sent to plaintiff Ramona Schimmel on June 25, 1993, CBA employees completed the papers required to file suit. Slaughter himself signed the Magistrate Court complaint on September 30, 1993. The Magistrate Court entered default judgment against plaintiff Schimmel on November 24, 1993. Schimmel's wages were subsequently garnished for the full amount of the debt plus interest and court costs. The garnishment was dismissed on April 8, 1994.

The record now before the court does not indicate how many WNS letters were mailed, but defendants stated in their answer that the number of WNS–2 letters sent can be determined through CBA's computer records.

## II. Discussion

The Eleventh Circuit has held that the procedural and historical context of the Act clearly indicate that it was intended to protect unsophisticated consumers from the abuses and strong arm tactics commonly found in the debt collection industry. *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1173 (11th Cir.1985). Accordingly, the court must view the letter from the perspective of the "least sophisticated consumer." *Id.* at 1175.

■ Plaintiff alleges that the letter in question violated the Act in several ways.

Although a finding of a single violation would justify the granting of summary judgment for the plaintiff, the number and extent of violations contained in the letter is relevant to the issue of proper damages to be awarded to the class. Accordingly, each of these potential violations requires separate discussion.

### A. False, Deceptive or Misleading Representations?— § 1692e

■ Plaintiffs allege three ways in which the letter violates section 1692e of the Act, which states "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Many practices are specifically prohibited by subsections of 1692e, but the section is clear that any deceptive collection practice violates the Act, even if it is not specifically enumerated in the statute. See 15 U.S.C. § 1692e; *Clomon v. Jackson*, 988 F.2d 1314, 1320 (2nd Cir.1993).

■ The most egregious and disturbing claim of deception is that the letter falsely implies that the account has been referred to an attorney whose law practice is independent of and separate and distinct from the credit bureau, when in truth and fact the account was still being handled by CBA and its owner-manager Slaughter. Defendants argue that the letter does not imply that Slaughter is independent of CBA, and that it is irrelevant that he has no other legal clients. Defendants further argue that the Act does not require Slaughter to disclose that his law office is located in the CBA building, or that he is the majority shareholder of CBA and involved in its daily activities. They argue that because Slaughter personally reviewed each file before signing the letter, and because he did indeed intend to file suit as indicated by the subsequently filed Magistrate Court complaint, he complied with the Act's requirements.

Leaving aside whether the type of review performed by Slaughter was adequate for him to form an actual and valid opinion as to the proper direction for the account, *see Clomon*, 988 F.2d at 1321–22, the letter was deceptive in another more subtle respect. The letterhead reads "Attorney At Law," and

the letter begins by stating "As attorney for the Credit Bureau of Athens, Inc., this account has been turned over to me for suit purposes." This is a rather obvious attempt to suggest that the account was referred to an independent attorney who was fully able, and willing, to prosecute the lawsuit in an attempt to win a judgment against the debtor. Slaughter's admitted policy of withdrawing from the case and substituting another attorney to prosecute the lawsuit should the debtor go so far as to file an answer directly contradicts that intentional suggestion.

The truth of the matter is that the account had not really been "turned over" to anyone. The concept of hiring an attorney necessarily implies that the attorney is an independent third person hired to represent a client in a matter. See *Freund v. Butterworth*, 117 F.3d 1543 (11th Cir. 1997) (noting that one of the most important duties a lawyer owes his client is independent judgment). "Attorney" is defined as "an agent or substitute, or one who is appointed and authorized to act *in the place or stead of another*." BLACK'S LAW DICTIONARY at 128 (6th ed.1990) (emphasis added). Similarly, the "practice of law" is defined as the "rendition of services requiring the knowledge and the application of legal principles and technique *to serve the interests of another* with his consent." *Id.* at 1172 (emphasis added). Slaughter's actions do not fit either definition because of the total lack of independence involved in his representation of the company he owned and controlled. One cannot "hire" or "retain" himself.

As the Seventh Circuit has noted, "An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking." *Avila v. Rubin*, 84 F.3d at 222, 229 (7th Cir.1996). For Slaughter to attempt to get the plaintiffs' knees knocking by intentionally and falsely indicating that the account had reached an independent attorney ready and willing to fully prosecute a lawsuit—including

going to trial if necessary—constitutes an act of deception and a clear-cut violation of the letter and spirit of the Act.[1]

■ In the second claim of deception, plaintiffs argue that by stating "After judgment is obtained, garnishment can be brought to satisfy judgment," the letter falsely implies that judgment against the debtor is inevitable. Defendants assert that the language merely states one of the options available to a debt collector once judgment is obtained.

Nearly identical language has been considered by another court and found to be susceptible to two different interpretations. *Dutton v. Wolhar,* 809 F.Supp. 1130, 1141 (D.Del.1992). On one hand, the statement might be read as defendants urge—as merely a statement of one of the courses available to a collector enforcing a judgment. However, as the *Dutton* court noted, the other, and far more likely, interpretation urged by plaintiffs is that a judgment against the debtor is a virtual certainty once suit is filed. *Id.* An unsophisticated debtor reading a letter originating from a lawyer and stating "after judgment is obtained" would very likely interpret it to mean that he had no chance of prevailing once a lawsuit was filed. Because the language must be considered with the least sophisticated debtor in mind, the court finds, as the *Dutton* court did, that this language violates section 1692e(10) of the Act.

■ Plaintiffs also claim the letter is deceptive because it misstates the period of time provided the debtor to contest the debt. The letter states that "suit will follow after thirty (30) days." Plaintiffs argue that this wrongly implies that the debtor has thirty days from the date of the letter within which to dispute the charge, rather than thirty days from the date the debtor receives the letter.

The court finds that nothing in this language invites the debtor to interpret the dispute period to be shorter than the thirty days provided by the statute. At most, this amounts to a badly worded and unintention-

ally imprecise sentence. Thus, even when viewed from the perspective of the least sophisticated consumer, the court finds that this language is not deceptive under section 1692e.

## B. Adequacy of Validation/Verification Notice— § 1692g

■ Section 1692g of the Act requires that within five days of the initial communication with a debtor, the collector must provide the debtor with a notice explaining the amount of the debt, the name of the creditor, and the debtor's right to dispute the debt in writing within thirty days from the date the notice is received. 15 U.S.C. § 1692g. Plaintiffs allege the letter did not contain adequate validation/verification information as required by section 1692g of the Act, or, alternatively, that the notice was "overshadowed" by other language in the letter.

The basis for the inadequate or overshadowed notice claim is the letter's statement that "suit will follow after thirty days." As in the deception claim, plaintiffs argue this phrase "appears to mean the thirty days notice begins when the letter is dated," and therefore that the thirty days from the date of the letter will always be at least one day shorter than the thirty day period after receipt of the notice provided for under the Act (Pl. Brief [Tab # 46] ).

As noted above in relation to the deception claim, the court finds that while the letter may be unartfully drafted there is nothing in the letter suggesting that the debtor has less than thirty days to dispute the charge. This is worlds apart from the usual charge of an inadequate or overshadowed validation/verification notice, which usually deals with letters requesting payment within a much shorter period in direct contradiction with the notice requirement. *See, e.g., Miller v. Payco–General American Credits, Inc.,* 943 F.2d 482, 484 (4th Cir.1991) (demanding payment immediately); *Graziano v. Harrison,* 950 F.2d 107 (3rd Cir.1991) (demanding payment within ten days). Moreover, any misunderstand-

1. The court notes that had the letter been up front about the true situation—for instance, by explaining that Slaughter owned CBA but was also an attorney, and that he would initiate suit but would substitute another attorney to act as

litigator if the debtor chose to contest the suit—it would not have been deceptive. But to mislead the debtor into believing that this crucial next step had already been taken is the very type of deception the Act was designed to prevent.

ing on this point would only have been slight and unintended by defendants. Accordingly, the court finds that the validation/verification notice contained in the letter was adequate and was not overshadowed by other language in the letter.

### III. Conclusion

For the reasons given above, plaintiffs' motion for summary judgment on the issue of liability only is **GRANTED**, and defendants' motion for summary judgment is **DE-NIED**. Counsel for the parties are **DIRECTED** to confer by phone or in person to determine how the class notice should be modified in accordance with this order. Within ten days, counsel shall provide the court with a joint revised class notice, briefly outlining any areas of dispute other than the damages provision already before the court on motion. In addition, counsel shall suggest to the court at that time what direction the case should be given in order to bring the matter to a close in the near future.