# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CATHERINE EVON,
        *Plaintiff-Appellant,*

v.

LAW OFFICES OF SIDNEY MICKELL
and SIDNEY MICKELL,
        *Defendants-Appellees.*

No. 10-16615

D.C. No.
2:09-cv-00760-
JAM-KJN

CATHERINE EVON,
        *Plaintiff-Appellee,*

v.

JOHN N. DAHLBERG,
                *Appellant,*

and

LAW OFFICES OF SIDNEY MICKELL,
        *Defendants.*

No. 10-17836

D.C. No.
2:09-cv-00760-
JAM-KJN

OPINION

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted
February 16, 2012—San Francisco, California

Filed August 1, 2012

Before: Betty B. Fletcher, John T. Noonan, and
Richard A. Paez, Circuit Judges.

8469

Opinion by Judge B. Fletcher;
Dissent by Judge Noonan

**COUNSEL**

Sergei Lemberg, Lemberg & Associates LLC, Stamford, Connecticut, for the plaintiff-appellant.

John N. Dahlberg, Dillingham & Murphy, LLP, San Francisco, California, for the defendants-appellees.

## OPINION

B. FLETCHER, Circuit Judge:

Both parties in this action appeal various rulings of the district court's summary judgment, class certification, attorney's fees, and sanctions orders. The principal issue is whether a debt collector may send collection notices addressed to the debtor, in "care of" the debtor's employer. We conclude that the answer is "no."

Defendant Law Offices of Sidney Mickell sent a debt collection letter addressed directly to Plaintiff Catherine Evon in "care of" her employer. Evon filed a class action lawsuit alleging that Mickell's act of sending letters "care of" the class members' employers violated the Fair Debt Collection Practices Act's prohibition on communication with third parties. 15 U.S.C. § 1692c(b). She further alleged that the contents of the letter violated the Act's prohibition against "false, deceptive, or misleading misrepresentation[s]." § 1692e. Because Congress enacted the FDCPA to protect debtors from abusive debt collection practices, *id.*, and because we have consistently interpreted the statute liberally to achieve that objective, Mickell's act of sending "care of" letters constitutes a per se violation of the FDCPA. We therefore reverse the district court's denial of Evon's class certification motion on that issue and remand for further proceedings. We agree, however, with the district court that the contents of the letter does not violate the Act and we therefore affirm the district court's denial of Evon's class certification motion in that regard.

## I.   BACKGROUND

Evon incurred a debt, which was assigned to Mickell for collection. As part of Mickell's collection efforts, a debt collector contacted Evon at home on several occasions. During a phone call between Evon and one of Mickell's debt collectors, Evon asked that she not be contacted at work. Nonethe-

less, either intentionally or by mistake, Mickell sent a debt collection letter to Evon's place of employment. The mailing address read:

> Catherine Evon **PERSONAL AND**
> **CONFIDENTIAL**
> C/O Homeq Servicing
> 4837 Watt Ave #100
> North Highlands CA, 95660

One line below the mailing address read:

> Creditor: CACH, LLC Our File Number:
> xxxxxxxxxxxxxxxx
> Original Creditor: Maryland National Bank
> Original Account Number: xxxxxxxxxxxxxx
> Balance: $xxxx.xx

The letter was placed in a window-style envelope and it is unclear whether a viewer could see this debt-related information.

The return address on the envelope read:

> Law office of Sidney H. Mickell
> 5050 Palo Verde St., Ste. 113
> Montclair, CA 91763

The letter was opened and read by various individuals, including people in the legal department, before it found its way to Evon. *Id.* The letter stated that Evon owed a debt and that failure to pay could result in legal action. *Id.*

On March 18, 2009, Evon filed suit alleging violations of the FDCPA. On July 13, 2009, Evon filed an amended class action complaint alleging that (1) Mickell's act of sending debt collection letters to the class members' workplaces was unlawful; and (2) the content of the letters violated the

FDCPA because they included language that was false, misleading, deceptive or threatening.[1] Evon moved for partial summary judgment on the issue of liability and also moved for class certification. Mickell moved for summary judgment on all of Evon's claims and opposed the motion for class certification.

The district court denied Evon's motions for partial summary judgment and class certification. The district court granted Mickell's motion for summary judgment on the class claims finding that neither Mickell's act of sending letters to the plaintiffs' workplaces nor the content of the letters violated the FDCPA. But the district court denied summary judgment on the issue of whether Mickell violated the FDCPA by sending a letter to Evon's workplace, finding that fact issues existed as to whether the letter was sent in error.

After the district court rendered its decision, Evon accepted Mickell's Rule 68 offer of judgment on her individual claim. Pursuant to the judgment, Evon filed an application for attorney's fees and the district court held a hearing on the motion. Evon sought more than $90,000 in attorney's fees and costs and the district court awarded her $2,301.95. Evon timely appeals.

## II.  JURISDICTION

We begin by determining whether we have jurisdiction over Evon's appeal of the district court's summary judgment and class certification rulings.

Mickell first argues that there is no appellate jurisdiction over the district court's partial summary judgment rulings

---

[1]The amended class action complaint also alleged a violation of the Rosenthal Fair Debt Collection Practices Act but Evon voluntarily withdrew that count and one of the FDCPA counts. In addition, Evon withdrew her claim for actual damages.

because those rulings did not dispose of the entire case. While it is true that "orders granting partial summary judgment, because they do not dispose of all claims, are not final appealable orders under section 1291," *Cheng v. Comm'r*, 878 F.2d 306, 309 (9th Cir. 1989), Evon does not argue that appellate jurisdiction arose after the district court's partial summary judgment rulings, but rather *after* the district court entered final judgment.

Mickell's next argument is that there is no appellate jurisdiction because the district court's judgment did not "incorporate or refer to the partial summary judgment rulings." There is no requirement that the judgment must incorporate prior rulings to be considered final. This circuit takes a "pragmatic approach to finality in situations where events subsequent to a nonfinal order fulfill the purposes of the final judgment rule." *Dannenberg v. Software Toolworks, Inc.*, 16 F.3d 1073, 1075 (9th Cir. 1994). In this case, a final judgment was entered on July 15, 2010, disposing of all the claims between the parties. "There is no danger of piecemeal appeal . . . if we find jurisdiction here, for nothing else remains in the federal courts." *Anderson v. Allstate Ins. Co.*, 630 F.2d 677, 681 (9th Cir. 1980).

**[1]** Mickell's final jurisdictional argument is that by voluntarily dismissing her claims after the district court denied class certification, Evon extinguished her personal interest in the litigation, and therefore, no justiciable controversy remains to be heard on appeal. We recently considered this argument in *Narouz v. Charter Communications*. 591 F.3d 1261 (9th Cir. 2010) (addressing "the issue of whether a class representative who voluntarily settles his or her individual claims in a putative class action renders an appeal from a denial of class certification moot."). There, the court considered two prior Supreme Court cases, *United States Parole Commission v. Geraghty*, 445 U.S. 388 (1980), and *Deposit Guaranty National Bank, Jackson Mississippi v. Roper,* 445 U.S. 326 (1980), that discussed a related question: whether a

named plaintiff retained jurisdiction to appeal a denial of class certification after his or her claims *involuntarily* expired. *Id.* at 1264. *Geraghty* and *Roper* reasoned that in such cases, the class representative's ability to appeal the adverse class certification ruling depends on whether he or she maintains a personal stake in obtaining class certification defined as "an interest in spreading litigation costs and shifting fees and expenses to the other litigants with similar claims." *Id.*; *accord Pitts v. Terrible Herbst,* 653 F.3d 1081, 1090 (9th Cir. 2011) (noting that if the district court has denied class certification the class representative may nonetheless retain "either an individual economic interest in 'shift[ing] part of the costs of litigation to those who will share in its benefits if the class is certified and ultimately prevails' or a private-attorney-general-like interest in having a class certified if the requirements of Rule 23 are met.") (citations omitted). Our opinion in *Narouz* extended this principle to cases where the "class representative *voluntarily* settles his or her individual claims." *Id.* (emphasis added). We explained that in order to retain a "personal stake" in the class certification ruling, a named plaintiff cannot contract away "any and all interests he or she may have had in class representation through a private settlement agreement." *Id.* (citing *Toms v. Allied Bond & Collection Agency, Inc.*, 179 F.3d 103, 105-06 (4th Cir. 1999) (holding that the class representative had maintained no interest in a case where he expressly relinquished "any and all" claims "of any kind or nature whatsoever he may have individually" in addition to "any claims for attorney's fees, costs, or compensation as class representative, [and any claims] he may have as a member/representative of the putative class")). Conversely, "a settlement agreement that specifically provides that the class representative is solely releasing individual claims may permit the class representative to retain a 'personal stake' in the class claim." *Id.* (citing *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 529 (D.C. Cir. 2006) (holding that the named plaintiff maintained a personal stake when the settlement agreement released the defendant of "any

and all individual claims that she might have" which were not "in derogation of . . . Plaintiff's class claim")). Whether we have jurisdiction over Evon's claim, therefore, turns on the language of her settlement agreement.

Evon signed a Rule 68 offer of judgment that states:

Defendants Law Office of Sidney Mickell and Sidney Mickell, Esq. ("Defendants") hereby offer to allow judgment to be taken against them pursuant to Federal Rule of Civil Procedure 68 as follows:

1. Judgment in favor of Plaintiff and against both Defendants, inclusive, in the total amount of $1,010.99 (one thousand ten dollars and ninety nine cents).

2. The reasonable recoverable costs of the action now accrued as determined by the Court, together with a reasonable attorney's fee incurred through the date of this offer, as determined by the Court and including those fees and costs reasonably necessary to establish the amounts of the reasonable recoverable costs and reasonable attorney's fee pursuant to 15 USC § 1692k(a)(3).

This offer is not a concession or admission of liability on the part of defendants, or an admission or concession that Plaintiff has any damages. Defendants also do not concede or admit that Plaintiff has a right to appeal any prior ruling of this Court if she accepts this offer.

**[2]** While the language of the offer of judgment does not include an express reservation of Evon's right to pursue an appeal on behalf of the class, it is not so broad that it can be read to release her class claims. In cases where courts have found that a plaintiff has bargained away the right to appeal

the class certification ruling, the language of the settlement agreement has made explicit reference to the class claims, thus clearly supporting that conclusion. *Cf. Sanford v. MemberWorks, Inc*., 625 F.3d 550, 557 (9th Cir. 2010) (dismissing class representative who relinquished " 'all claims, . . . whether class, individual, or otherwise, including any claim for costs, expenses, pre or post judgment interest, penalties, fees (including attorneys' fees, expert fees and consulting fees) . . . for any kind of relief whatsoever (including injunctive relief, monetary relief, damages, punitive damages, restitution, reimbursement, disgorgement, and economic injury)' " in settlement agreement); *Toms v. Allied Bond & Collection Agency, Inc.*, 179 F.3d 103, 105-06 (4th Cir. 1999) (holding that plaintiff released both individual and class claim in settlement agreement that "expressly relinquished 'any and all' claims 'of any kind or nature whatsoever he may have individually . . . [and] 'any and all' monetary claims 'including any claims for attorney's fees, costs, or compensation as class representative, he may have as a member/representative of the putative class, which in any way are related to or arise from those matters pleaded' in this litigation."); *Dugas v. Trans Union Corp.*, 99 F.3d 724, 728-29 (5th Cir. 1996) (finding lead plaintiff relinquished individual and class claims where settlement expressly referred to the class certification denial and plaintiff agreed to dismiss the entire "action" without any reservation of the right to appeal). When we compare Evon's agreement with the agreements in *Sanford*, *Toms*, and *Dugas*, we find that it is not an unqualified release of her class claims. Nowhere in the agreement is there a reference to "all claims" and no mention is even made of the class claims or the class certification ruling. Indeed, the agreement appears to contemplate that Evon will appeal, and if she does, preserves the jurisdictional question.

**[3]** Moreover, to the extent that the Rule 68 offer is ambiguous regarding whether Evon relinquished her class claims, we apply general principles of contract law to determine the meaning of the agreement. *See Guerrero v. Cummings*, 70

F.3d 1111, 1113 (9th Cir. 1995) ("[t]he usual rules of contract construction apply to interpreting the terms of a Rule 68 settlement offer. . .") (internal quotation marks and citation omitted). Thus, we may use the parol evidence doctrine to shed light on the meaning of language in a contract. *See* RESTATEMENT (SECOND) OF CONTRACTS §§ 212, 214(c) (1981) (stating that where the express terms of an integrated agreement are ambiguous, the court may determine the intended meaning of the contracting parties by considering the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, and the course of dealing between the parties). Here, our conclusion is further strengthened by comparing the language of the original Rule 68 offer, which Evon rejected, with the language of the agreement she ultimately accepted. The first offer stated:

> Plaintiff's acceptance of Defendant's Offer of Judgment herein shall be deemed voluntary and shall operate as an express and complete release of any and all of Plaintiff's individual claims and all class-based interests in this litigation. Plaintiff's acceptance of Defendant's Offer of Judgment shall end this case . . .

> Plaintiff agrees to take no appeal, and to seek no reconsideration or further review in this Court, or in the Court of Appeals, or in the United States Supreme Court, of any and all ruling, Orders, or findings made as of the date of acceptance, or thereafter, including but not limited to District Court's June 2, 2010 rulings denying (1) plaintiff's motion for class certification, her (2) motion for partial summary judgment, her (3) motion to reopen discovery, (4) the granting of defendant's motion for partial summary judgment . . .

Evon rejected this offer which explicitly released *all* of her individual *and* class-based claims. Unlike the first offer, the

second offer, which she accepted, makes no mention of the class-based claims and therefore, Evon cannot be said to have contracted away these claims.

Mickell argues that Evon could easily have preserved her right to appeal by rejecting its offer of judgment. Instead, Mickell argues, Evon chose to accept the Rule 68 offer. But Evon's choice should be understood in context: the district court in this case had only partially granted Mickell's motion for summary judgment—Evon's claim that Mickell violated the FDCPA by sending a letter to her workplace was proceeding to trial. At that point, her choices were: (1) go to trial; or (2) accept the Rule 68 offer and then appeal the resulting final judgment.[2] With respect to her first choice, during the course of the litigation, Evon abandoned her actual damages claim so even if she went to trial and won, the maximum recovery would be statutory damages which are capped at $1,000 plus costs and attorney's fees. The second offer was for just more than $1,000. By acceptance, she could avoid the expense of trial and the risk of recovering less than Mickell's Rule 68 offer. If she failed to accept the offer, the consequence could be no recovery of attorney's fees and even being saddled with Mickell's costs.[3] She chose to accept the second offer and pursue an appeal of the district court's rulings.

---

[2]Evon alternatively could have sought leave to file an interlocutory appeal of the district court's denial of class certification. The decision whether to grant leave to file an interlocutory appeal is, however, discretionary, and "should be granted sparingly" and only in "rare cases." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005). If the request for interlocutory appeal was denied, Evon would then have had the same choices as before, but with the additional expense of having sought interlocutory review. Instead, Evon pursued a reasonable course of action; she preserved her class claims notwithstanding her acceptance of Mickell's second offer of judgment.

[3]Under Rule 68, if a plaintiff rejects a defendant's offer of judgment and "the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." Fed. R. Civ. Proc. 68.

**[4]** In light of the considerations outlined above, Evon's class claims remain subject to appellate review.

## III.   SUMMARY JUDGMENT RULINGS

### (A)   Standard of Review

The panel reviews a grant or denial of summary judgment de novo. *Mark H. v. Hamamoto*, 620 F.3d 1090, 1096 (9th Cir. 2010). "Summary judgment is to be granted only if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, show that there is no genuine issue as to a material fact, and the moving party is entitled to judgment as a matter of law." *Legal Aid Servs. of Oregon v. Legal Servs. Corp.*, 608 F.3d 1084, 1093 (9th Cir. 2010).

In addition, the panel reviews a district court's interpretation of the FDCPA de novo. *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010).

### (B)   Analysis

#### (1)   "Care of" Letters to Debtors' Employers

Evon alleges that Mickell's sending of debt collection letters to class members' places of employment without first obtaining their consent violates section 1692c(b) of the FDCPA.

That section states:

(b) Communication with third parties

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of com-

petent jurisdiction, or as reasonably neces-
sary to effectuate a postjudgment judicial
remedy, a debt collector may not communi-
cate, in connection with the collection of
any debt, with any person other than the
consumer, his attorney, a consumer report-
ing agency if otherwise permitted by law,
the creditor, the attorney of the creditor, or
the attorney of the debt collector.

**[5]** Notably absent from the list of individuals or entities
that a debt collector may communicate with is the debtor's
employer. Under the plain language of this statute, a violation
occurs when a debt collector sends a letter to the debtor's
place of employment absent consent.[4] That much is clear. The
trickier question is whether sending a letter addressed to the

---

[4] At the hearing on the motions, the district judge pressed Evon's coun-
sel to point to the specific language of the statute that explicitly says that
sending a letter to a debt collector's employer is always prohibited:

> The Court: . . .[Debtors] owed a debt and they got a letter that
> was sent to them at their place of employment, which in and of
> itself isn't against the law; right? You'd agree with that? You can
> send a letter to a place of employment?

> [Evon's counsel]: No, your Honor.

> The Court: You're shaking your head no. You think sending a
> letter — tell me, because I looked at the statute. Where is a prohi-
> bition that says you can never send a letter to the employer?

> [Evon's counsel]: Well, the prohibition is in 1692c(b).

> The Court: I'm looking at it. Tell me where it says a debt collec-
> tor can never send a letter to an employer, because I didn't read
> that in the statute.

*Expressio unius est exclusio alterius* is a fundamental principle of statu-
tory construction that the express designation of one thing may be prop-
erly construed to mean the exclusion of others not expressed. *See Barnhart
v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003). Being mindful of this
principle permits the conclusion that subsection (b) is an exhaustive list of
the categories of individuals with whom a debt collector may communi-
cate; a debtor's employer is not on the list.

debtor but using the debtor's employer's address constitutes a violation.

**[6]** Congress enacted the FDCPA in 1968 in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors [which] contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Congress intended the Act to eliminate unfair debt-collection practices such as embarrassing communications. The Senate Report explicitly stated:

> Collection abuse takes many forms, including . . . disclosing a consumer's personal affairs to friends, neighbors, or an employer . . .

Sen. Rep. No. 382, 95th Cong., 1st Sess. 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696.

**[7]** Given this court's recognition that the FDCPA is a remedial statute which should be interpreted "liberally," *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1168 (9th Cir. 2006), Mickell's act manifestly constitutes a violation. Mickell knew or could reasonably anticipate that a letter sent to a class member's employer might be opened and read by someone other than the debtor as it made its way to him/her.[5] This is exactly what happened to Evon, causing her

---

[5]The dissent criticizes us for failing to provide "evidence" to support our reasoning. The dissent overlooks a critical piece of evidence: the letter sent to Evon's employer, despite being marked "personal and confidential," was opened and read by several people, including some in the company's legal department.

Judge Noonan then proceeds to rest his conclusion on his own experience. Dissent at 8508 ("Nothing in my experience suggests that [opening letters sent to an employee in care of the employer's address] is the rule or common practice."). When it comes to opening other people's mail,

stress and embarrassment, precisely what the Act is designed to prevent.

Next, even if Mickell assumed that some debtors receive mail at their place of employment, it is not reasonable for Mickell to assume that all debtors' mail so received remains unopened and unseen before reaching the debtor. As a lawyer in the business of debt collecting, Mickell should have known of the real possibility that a letter to a debtor's place of employment, even one marked "Personal and Confidential," would be viewed by someone other than the debtor.

Finally, the return address on the envelope was from the "Law office of Sidney H. Mickell." Any person handling Evon's mail would therefore know that Evon was receiving legal mail, a fact many people would prefer be kept private. Other than holiday greetings, correspondence from an attorney's office rarely relays good news and often communicates information that can be embarrassing or even frightening to the recipient. As the Senate Report noted, disclosing a consumer's personal affairs to his or her employer is a form of collection abuse. The Act was explicitly intended to protect consumers from these types of communications.

---

Judge Noonan's experience is hardly relevant. He is not likely among the class of persons to be sent a debt collection letter directly or "care of" his employer. The demographic statistics of American debtors show that more than 70% never graduated from college and well over half earned less than $40,000 per year (the data's sample is of bankruptcy filers). Institute for Financial Literacy, *2010 Annual Consumer Bankruptcy Demographics Report, A Five Year Perspective of the American Debtor*, 11-12, Sept. 2011, available at http://www.financiallit.org/PDF/2010_Demographics_ Report.pdf (last visited June 4, 2012). Occupations of those whose median annual wage is under $40,000 include food preparation workers, janitors, clerical workers, and construction laborers. Bureau of Labor Statistics, *National Compensation Survey: Occupational Earnings in the United States, 2010*, Table 3, 3-26, 3-18-19, 3-23, 3-26, available at http://www.bls.gov/ncs/ocs/sp/nctb1477.pdf (last visited June 4, 2012). These workers likely have little say over their employers' mail handling practices.

The Federal Trade Commission (FTC) Commentary prohibits this type of conduct. In its Staff Commentary, the FTC states:

> Accessibility by third party. *A debt collector may not send a written message that is easily accessible to third parties.* For example, he may not use a computerized billing statement that can be seen on the envelope itself. A debt collector may use an "in care of" letter only if the consumer lives at, or accepts mail at, the other party's address.

Staff Commentary, 53 Fed. Reg. 50097-02 (Dec. 13, 1988) (emphasis added). Although not dispositive, the FTC's Commentary is illustrative of the types of permissible and impermissible conduct.

Moreover, Mickell conceded that he *had* Evon's home address. He just didn't want to use it. As he testified at his deposition, Mickell "believed that a letter at work that is received during the day when people were awake and when people are in a business mode and my office is open, is more conducive to a successful communication" with the debtor. That may be true in some instances; perhaps some debtors would prefer to receive debt collection letters or phone calls at their place of employment. The Act allows debt collectors to contact these debtors; the debtor however needs *first* to give his or her consent. Mickell admitted that he had no practice or policy in place to inquire whether a debtor consents to receiving mail at work. He took a chance that his conduct would not run afoul of the Act. "[O]ne who deliberately goes perilously close to an area of proscribed conduct [takes] the risk that he may cross the line." *FTC v. Colgate-Palmolive, Co.*, 380 U.S. 374, 393 (1965) (quoting *Boyce Motor Lines, Inc., v. United States*, 342 U.S. 337, 340 (1952)). Here, Mickell's conduct crossed the line.

Permitting debt collectors to send letters addressed to the debtor in "care of" the debtor's employer absent the debtor's

consent would allow debt collectors to circumvent the protec-
tion inherent in section 1692c(b); it would also impermissibly
place the burden on the consumer to affirmatively contact the
debt collector to notify it that communications to third parties
are unacceptable. As Evon points out, if Mickell's practice
was permissible, what would prevent Mickell or any debt col-
lector from sending debtors letters addressed to them "care
of" their parents, neighbors, friends, or relatives?

[8] Because Mickell's act constitutes a per se violation, the
district court erred in denying Evon's motion for summary
judgment on the issue of liability.

### (2)   Content of the Letters

[9] Evon next argues that the content of the letter violated
15 U.S.C. § 1692e which broadly prohibits the use by a debt
collector of "any false, deceptive, or misleading representa-
tion or means in connection with the collection of any debt."

The letter states, in its entirety:[6]

Dear Ms. Evon:

This office has attempted to avoid the costly and
time consuming process of litigating the above-
mentioned debt. Unfortunately, it appears that our
efforts have failed.

Because you have chosen to limit our alternatives in
resolving Account Number xxxxxxxxxxxxxxxx,
California Code of Civil Procedure Section 1033,
requires us to inform you of the fact that we intend
to commence legal action against you in the Superior

---

[6]Again, Evon asserts that all class members received the same or similar
letter.

Court of the State of California, which could result in a judgment against you.

California Code of Civil Procedure, Section 1033, also requires us to inform you that such a judgment awarded against you could not only include the principle due, but pre-judgment interest, court costs, and attorney fees as well.

**According to California Law, a judgment awarded against you among other things, could result in remedies such as Wage Garnishments, Bank Account Levies, or Attachments of your assets, as well as accrue interest at the legal rate of 10% per year.**

Demand is hereby made for immediate payment of the balance in full. Please make out your check, or money order, in the amount of 6837.35 payable to The Law Office of Sidney Mickell. We also accept payments by Visa and Mastercard. In the event this office does not receive your payment in full, or another arrangement is accepted by my client, we will assume that you have chosen litigation, and whichever of the above-mentioned legal remedies that are reasonable and appropriate, to be our only alternative.

Sincerely,
/s
Sidney H. Mickell

BE ADVISED, THIS IS AN ATTEMPT TO COLLECT A DEBT BY A LEGAL DEBT COLLECTOR. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. AS REQUIRED BY LAW, YOU ARE HEREBY NOTIFIED THAT A NEGATIVE CREDIT REPORT REFLECTING

YOUR CREDIT RECORD MAY BE SUBMITTED TO A CREDIT REPORTING AGENCY IF YOU FAIL TO FULFILL THE TERMS OF YOUR CREDIT OBLIGATION.

**[10]** "Whether conduct violates [§ 1692e] . . . requires an objective analysis that takes into account whether 'the least sophisticated debtor would likely be misled by a communication.' " *Donohue*, 592 F.3d at 1030 (citation omitted). "The objective least sophisticated debtor standard is 'lower than simply examining whether particular language would deceive or mislead a reasonable debtor.' " *Terran v. Kaplan*, 109 F.3d 1428, 1431-32 (9th Cir. 1997) (citation omitted). Most courts agree that although the least sophisticated debtor may be uninformed, naive, and gullible, nonetheless her interpretation of a collection notice cannot be bizarre or unreasonable. *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009); *see also Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993) ("[I]n crafting a norm that protects the naive and the credulous the courts have carefully preserved the concept of reasonableness."); *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 298 (3rd Cir. 2008) ("[T]he least sophisticated standard safeguards bill collectors from liability for 'bizarre or idiosyncratic interpretations of collection notices' by preserving at least a modicum of reasonableness, as well as 'presuming a basic level of understanding and willingness to read with care [on the part of the recipient].' " (citation omitted)).

Evon's primary arguments are that, to the least sophisticated debtor, the letter misstates that (1) judgment is inevitable; and (2) the judgment will result in the taking of *all* wages or assets.

With respect to Evon's first argument, she cites *Schimmel v. Slaughter*, 975 F.Supp. 1357 (M.D. Ga. 1997) in support. There, an attorney sent a collection letter that included the following language:

> I have ordered papers for suit. After judgment is obtained, garnishment can be brought to satisfy judgment.

*Id.* at 1360.

The court found that the most likely interpretation of the unqualified statement "[a]fter judgment is obtained" is "that a judgment against the debtor is a virtual certainty once suit is filed." *Id.* at 1363.

**[11]** Here, the statement does not say that legal action "will result in a judgment against you," which would come much closer to the language held by the court in *Schimmel* to appear to be a "virtual certainty" but rather says that legal action "*could* result in a judgment against you." (Emphasis added). Use of the conditional language in this instance is appropriate, accurate, and not misleading.

As to Evon's second argument, she relies on *Oglesby v. Rotche*, No. 93 C 4183, 1993 WL 460841 (N.D. Ill. Nov. 5, 1993). The statement at issue in that case was:

> THE COSTS OF THE LAWSUIT WILL BE CHARGED TO YOU, ALONG WITH STATUTORY INTEREST. ONCE JUDGMENT HAS BEEN ENTERED, IT IS OUR INTENT TO PROCEED WITH COURT ORDERED ATTACHMENT AND GARNISHMENTS OF ALL WAGES, PROPERTY, AND OTHER FINANCIAL ASSETS, ALL AT ADDITIONAL EXPENSE TO YOU.

*Id.* at *4.

The court rejected the debt collector's argument that "*all* wages, property, and other financial assets" could be reasonably understood to mean only "*some* wages, property, and other financial assets" and that as written, the statement mis-

represented the breadth of the garnishment and attachment statutes. *Id.* at *8.

Here, Evon argues that the letter fails to include language to make it clear that only a certain portion of a debtor's wages can be garnished[7] and that certain types of property, specified in Cal. Code. Civ. P. §§ 704.010, are exempt from judgment executions and cannot be levied upon.[8] Evon argues that here, like the statement at issue in *Oglesby*, "garnishment of *all* wages, levies of *all* bank accounts and/or attachment of *all* assets is unavoidable once court action has been initiated — an end result which could not lawfully happen." But the statement Evon complains of does not say "all" and her argument is an attempt to read that word into the language of the letter.

**[12]** Section 1692e prohibits only "false, deceptive, or misleading" representations. While the letter could have included additional clarifying language, we do not believe that the language of the letter goes so far as to be considered false, deceptive, or misleading. Accordingly, the district court did not err in denying Evon's motion for partial summary judgment with respect to liability on this claim.

## IV. Class Certification Ruling[9]

**[13]** Under Federal Rule of Civil Procedure 23, "[a] class action may be maintained if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (i.e.,

---

[7]Under California law, the maximum amount of earnings which may be garnished in satisfaction of a judgment is generally limited to 25 percent. 15 U.S.C. § 1673(a).

[8]Examples of exemptions include the homestead and specified maximum dollar amounts for certain assets (motor vehicles, furniture, etc.).

[9]Because we have concluded that Evon's § 1692e claim does not give rise to liability, the district court's refusal to certify a class based on a violation of those claims is moot. Because we conclude that Evon's § 1692c(b) claim may proceed, we limit our discussion to whether the district court erred in denying class certification of that claim.

numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of three categories described in subdivision (b)." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1437 (2010) (internal quotation marks omitted).

### (A) Standard of Review

The decision to grant or deny class certification is within the trial court's discretion. *Yamamoto v. Omiya*, 564 F.2d 1319, 1325 (9th Cir. 1977). Thus, a district court's order denying a motion for class certification is reviewed for abuse of discretion. *Zinser v. Accufix Research Ins., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

### (B) Analysis

The proposed class is defined as follows:

> All consumers to whom, according to Defendants' records, within one year prior to filing this action the Defendants sent a collection letter at their place of employment identical to or substantially similar to the letter sent to [Evon].

### (1) Numerosity

This requirement is met if the class is so large that joinder of all members is impracticable. Fed.R.Civ.P. 23(a).

The district court found that numerosity was satisfied because there were 262 potential class members. Mickell does not address this argument on appeal. The district court did not abuse its discretion when it found this element satisfied.

### (2) Commonality

[14] This requirement is met if there are "questions of law and fact common to the class." Fed. R. Civ.P. 23(a). "Where

the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978-79 (9th Cir. 2008); *see also Wal-Mart Stores Inc., v. Dukes*, ___ U.S. ___, 131 S. Ct. 2541, 2551 (2011) ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.").

The district court found that the commonality requirement was "a close issue" but ultimately determined that fact questions existed that precluded finding it satisfied. The district judge believed these fact questions were whether: (1) the addresses on the letters were in fact business addresses; (2) whether class members had consented to receiving debt collection communications at their workplaces; (3) whether class members had specifically requested that debt collection communications not be sent to their workplaces.

**[15]** The seminal issue in this case is whether Mickell violated the FDCPA when he sent debt collection letters addressed to the debtor, but in "care of" the debtor's employer, without first obtaining consent. That claim is a common contention among the class and "determination of its truth or falsity" is pivotal to this lawsuit and is capable of determination "in one stroke." *Wal-Mart*, 131 S.Ct. at 2551.

In addition, Wal-Mart recently clarified that "[c]ommonality requires the plaintiff to demonstrate the class members 'have suffered the same injury.' " *Id.* quoting *Gen Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). The class members here have all suffered the same injury—they received a debt collection letter at their place of employment without first giving their consent, in violation of the FDCPA.

As for the district court's concerns regarding fact questions, it is not clear that any individualized inquiry is necessary on

this issue. Mickell conceded that he sent letters to debtors at their places of employment. Evon asserts that the addresses on the 262 letters are business addresses. If the letters were sent to the debtor, "care of" a business address, in light of Mickell's admission, it is reasonable to assume that the 262 letters were sent to the debtors' workplaces. Even assuming that an individualized inquiry is even necessary on this issue, it will consist of a limited, straightforward factual determination that would not preclude finding commonality.

With regard to the argument that individual questions of consent abound, this issue is a red herring. There is nothing in the record that supports the district court's finding that consent may be an issue in the case. Mickell produced nothing showing that certain class members had consented to receipt of the letters at work.

The district court's concern over whether class members had specifically instructed Mickell not to contact them at work was also unfounded. The issue in this case is that Mickell sent letters to class members' workplaces without first obtaining authorization. The class members do not have any burden to show that they contacted Mickell and that he sent a letter despite their request not to do so. While that may be true for some class members, it is only peripherally relevant to the critical issue in this lawsuit and therefore cannot defeat the commonality inquiry.

**[16]** This case presents the classic case for treatment as a class action: that is, the commonality linking the class members is the dispositive question in the lawsuit. It is not necessary that members of the proposed class "share every fact in common." *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010). Thus, the district court abused its discretion in finding that commonality was not satisfied.

### (3) Typicality

**[17]** To demonstrate typicality, the putative class must show that the named parties' claims are typical of the class.

Fed.R.Civ.P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.' " *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted).

Mickell argued below and the district court agreed that the typicality requirement is not satisfied because Evon's claim is subject to a unique bona fide error defense, specifically that Evon explicitly instructed Mickell's representative not to contact her at work and that Mickell mailed the letter to her workplace by accident.

But Mickell does not qualify for the bona fide error defense as a matter of law, and thus whether Evon's claim is subject to this affirmative defense cannot be a reason for finding that the typicality requirement is not satisfied.

**[18]** To be eligible for the bona fide error defense, Mickell would have to show that (1) he violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) he maintained procedures reasonably adapted to avoid the violation. *McCullough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011). The record is clear that Mickell intentionally sent letters to the workplaces of putative class members and that he had no procedures in place to discern a debtor's consent prior to sending the letters.[10] Thus, Mickell cannot avail himself of this affirmative defense. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, LPA*, 130 S.Ct. 1605, 1611-1612 (2010) ("[I]t is a fair inference that Congress chose to permit injured consumers to

---

[10]At Mickell's deposition, the following exchange occurred:

[Questioner]: Is it a policy to ask [the debtors] directly, "Can we send you a letter at work?"

Mickell: No.

recover actual damages, costs, fees, and modest statutory damages for 'intentional' conduct, including violations resulting from mistaken interpretation of the FDCPA."); *see also Reichert v. Nat'l Credit Sys.*, 531 F.3d 1002, 1007 (9th Cir. 2008) ("A debt collector is not entitled under the FDCPA to sit back and wait until a [mistake has been made] and then institute procedures to prevent a recurrence."). The district court abused its discretion when it found a lack of typicality based on this ground.

### (4)   Adequacy

**[19]** The named plaintiffs must fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(4). In making this determination, courts must consider two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanon*, 150 F.3d at 1020.

The district court found adequacy to be lacking and believed this factor to be "particularly decisive" of the class certification inquiry. The district court found that Evon was not the "best representative" for the class, and that plaintiff's counsel was not qualified to represent the class.

**[20]** As to the first issue, Mickell argues that because Evon waived her actual damages claim, she is not an adequate class representative. While Evon may have waived her actual damages claim, she is still able (and has) recovered statutory damages, fees and costs. That she has waived her actual damages does not make her an inadequate representative; she still maintains that the letter was sent to her employer in violation of the FDCPA and thus shares an interest and injury with all class members.

**[21]** As to the district court's second finding, there is nothing in the record that supports the district judge's conclusion

that Sergei Lemberg was not qualified to represent the class. The judge viewed the case as an "attorney-driven action," and cited *In re Hotel Telephone Charges*, 500 F.2d 86, 91 (9th Cir. 1974), for the proposition that because the only persons likely to benefit from a class action in this case are class counsel, a costly and time-consuming class action is hardly the superior method for resolving the dispute.

*In re Hotel Telephone Charges* involved an estimated 40 million class members that were allegedly defrauded by the owners of 600 hotels across the country by paying surcharges on their hotel room rates. *Id.* at 86-87. The court found that the plaintiffs' claims "raise[d] individual questions that could require decades of litigation" including the type of misrepresentation made and whether each individual plaintiff relied on it. *Id.* at 89. Even assuming, the court said, that "only ten percent of the unknown class members came forward with claims, . . . approximately one hundred years would yet be required to adjudicate the claims." *Id.* The court found that certifying a class would be unmanageable and would produce "no real benefit" (about two dollars to an individual plaintiff) to class members. *Id.* at 90-92.

**[22]** This is not such a case. The FDCPA is a consumer protection statute and was intended to permit, even encourage, attorneys like Lemberg to act as private attorney generals to pursue FDCPA claims. Moreover, plaintiffs have already benefitted and will continue to benefit from this case. Mickell admits that he has ceased his practice of sending letters to debtor's workplaces, a benefit to all class members. Furthermore, certifying the class will serve a "deterrent" component to other debt collectors who are engaging, or consider engaging in this type of debt collection tactic. Nor would recovery be meaningless to the individual class members here, since each would be eligible to receive the statutory maximum of $1,000 in damages. In light of the FDCPA's remedial goals, these are important considerations and the district judge abused his discretion by refusing to certify on this ground.

The district judge also faulted Lemberg for bringing the class certification motion at the same time as the summary judgment motion. Bringing a class certification motion together with a Rule 56 motion is consistent with the Federal Rules of Civil Procedure. *See Vega v. Credit Bureau Enters.*, No. CIVA02CV1550DGTKAM, 2005 WL 711657 (E.D.N.Y. March 29, 2005); *In re Risk Mgmt. Alts., Inc., Fair Debt Collection Practices Litigation*, 208 F.R.D. 493 (S.D.N.Y. 2002); *Goldberg v. Winston & Morrone, P.C.*, No. 95 Civ. 9282, 1997 139526 (S.D.N.Y. March 26, 1997)). While Rule 23 does not require a district court to fully consider the merits of the plaintiffs' claims, addressing the merits of the claims in a related summary judgment motion can have a substantial bearing on the required Rule 23 determinations. Simultaneously filing motions for summary judgment and class certification is certainly acceptable. The district court abused its discretion when it refused to certify for this reason.

**[23]** In sum, the district court abused its discretion in concluding that numerosity, commonality, typicality, and adequacy were lacking in this case. Because the district judge did not reach the Rule 23(b) factors, we remand for consideration of whether any one of the Rule 23(b) factors is satisfied.

## V. Attorney's Fees

Pursuant to the Rule 68 offer Evon accepted, Mickell agreed to pay Evon's reasonable and necessary attorney's fees and costs, to be determined by the court. Evon sought $91,474 in attorney's fees and $2,942 in litigation costs. Mickell opposed the fees application, primarily arguing that the number of hours billed was unreasonable.

The district judge recognized that Evon received an award but found that the case had merely "nuisance value." He further found that the "level of success achieved was next to zero" and that the hours Evon's attorney spent on the case were excessive and avoidable. He therefore denied recovery

for all but the amount of time necessary to draft Evon's complaint.

## (A)   Standard of Review

We "review the award or denial of attorney's fees for abuse of discretion, but any elements of legal analysis and statutory interpretation which figure in the district court's decision are reviewable de novo." *Coalition for Clean Air v. Southern California Edison Co.*, 971 F.2d 219, 229 (9th Cir. 1992). We "will reverse if the district court misperceives or misapplies the law governing fee awards." *Id.*

## (B)   Analysis

[24] The FDCPA provides that any debt collector who fails to comply with its provisions is liable "in the case of any successful action . . . [for] the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). The FDCPA's statutory language makes the award of fees mandatory. *Bridgeport v. Camacho*, 523 F.3d 973, 978 (9th Cir. 2008). "The reason for mandatory fees is that congress chose a 'private attorney general' approach to assume enforcement of the FDCPA." *Id.* (quoting *Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995)).

[25] The district judge focused on the case's supposed lack of merit and on the nominal value of the judgment obtained to the exclusion of other factors in the "lodestar" calculation.[11]

---

[11]"The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). After computing the "lodestar," the district court may then adjust the figure upward or downward taking into consideration twelve "reasonableness" factors:

(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal

As to the supposed lack of merit, Evon's suit resulted in Mickell abandoning his practice of sending debt collection letters to debtors' workplaces. Thus the lawsuit has already achieved a significant level of success.

Moreover, although Evon settled the case for a relatively small amount ($1010.99), *she recovered the full amount of allowable statutory damages*. This represents a complete recovery under the statutory scheme. In *Joe v. Payco-General Am. Credits*, No. 94-15338, 1994 WL 465841, (9th Cir. 1994), an unpublished disposition, Payco-General appealed the district court's award of reasonable attorney's fees and costs for an FDCPA violation. Payco-General argued that because Joe only won a nominal award ($1,001), reasonable attorney's fees were not warranted. *Id.* at *1. The court disagreed stating that Joe "was *completely successful* in this action to hold Payco-General responsible for its [statutory] violations" and was thus the "prevailing party" and entitled to reasonable attorney's fees. *Id.* (Emphasis added).

Furthermore, while the amount of damages recovered is relevant to the amount of attorney's fees awarded, it is only one of several factors that a court must consider in determining the fee award. *See City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986). We have specifically instructed that "courts should not reduce lodestars based on relief obtained simply because the amount of damages recovered on a claim was less

---

service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Morales*, 96 F.3d at 363 n.8 (quoting *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

than the amount requested." *Quesada v. Thomason*, 850 F.2d 537, 539 (9th Cir. 1988). Moreover, in *City of Riverside*, the Supreme Court, in the context of civil rights statutes, expressly rejected the proposition that fee awards must be in proportion to the amount of damages recovered. *See City of Riverside,* 477 U.S. at 574 (affirming fee award of $245,456.25 when damages recovered were $13,300). The same is true in consumer protection cases: where the monetary recovery is generally small, requiring direct proportionality for attorney's fees would discourage vigorous enforcement of the consumer protection statutes.

Lastly, while the award here was small, that is not necessarily controlling because "an award of nominal damages can represent a victory in the sense of vindicating rights even though no actual damages are proved." *Farrar v. Hobby*, 506 U.S. 103, 121 (1992) (O'Connor, J., concurring). That the lawsuit spurred Mickell to cease unlawful conduct is an important consideration, *see id.*, that the district court failed to recognize.

**[26]** The district court provided no meaningful explanation for the final number of hours it allowed; we therefore remand for a proper lodestar calculation. *See McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009); *Tutor–Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1065 (9th Cir. 2006).

## VI.   Reassignment

Lemberg requests reassignment to a different judge. In determining whether reassignment is proper, we consider:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the

appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of justice.

*United States v. Arnett*, 628 F.2d 1162, 1165 (9th Cir. 1979). "The first two of these factors are of equal importance, and a finding of one of them would support a remand to a different judge." *United States v. Sears, Roebuck & Co.*, 785 F.2d 777, 780 (9th Cir. 1986).

We recognize that the unusual circumstances necessary for remand to a different judge "rarely exist," *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352F.3d 367, 381 (9th Cir. 2003). We believe, however, that they are present here.

As we review the record below, we are struck by the district judge's forceful statements: the case was "unnecessary," a "waste of time," "not worth a dime," and "should never have been filed." Indeed, the record reflects an unfortunate dismissive attitude by the district judge both toward Lemberg and the class Evon seeks to represent.

**[27]** Because we reverse the district court's summary judgment on whether Mickell's practice constitutes a violation of the FDCPA and reverse on the motion for class certification, we doubt, based on the district judge's comments, that he will be able to put the views he has repeatedly expressed out of his mind. Thus, we conclude that reassignment to a different judge under the first *Arnett* factor is appropriate. Further, because the district court has openly stated that this case is worthless, remand under the second *Arnett* factor is appropriate as well. *See United States v. Reyes*, 313 F.3d 1152, 1159-60 (9th Cir. 2002) (reassigning the case under the "appearance of justice" factor where district judge openly stated that he believed the defendants were attempting to manipulate the system).

## VII.   Sanctions

Mickell appeals the district court's imposition of sanctions against him. The district court, exercising its inherent authority, *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991), imposed sanctions against Mickell in the amount of $1,260 for violating his own protective order and failing to seal and redact his client's confidential documents.

### (A)   Background

Mickell's attorney, John Dahlberg, obtained a protective order marking certain documents "confidential." In filing the class certification motion and partial summary judgment motions, Dahlberg, running up against the filing deadline, filed documents without sealing or redacting them, exposing to public view certain material that had been designated "confidential" under the protective order. Evon sought sanctions and the district court granted her motion because of Dahlberg's error.

Mickell argues that the violation of the protective order was inadvertent, that the district court found as much, and thus, the court lacked inherent authority to impose sanctions.

### (B)   Applicable Standards

District courts have the inherent power to sanction a lawyer for a "full range of litigation abuses." *Chambers*, 501 U.S. at 55. A district court's findings in a sanctions case are "given great deference." *F.J. Hanshaw Enters., Inc., v. Emerald River Dev. Inc.*, 244 F.3d 1128, 1136 (9th Cir. 2001); *see also Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1411 (9th Cir. 1990) ("A determination that an order was disobeyed is entitled to considerable weight because a district judge is the best equipped to assess the circumstances of the non-compliance.") (internal quotation marks and citations omitted).

**(C)   Analysis**

In *Fink v. Gomez*, 239 F.3d 989, 991-93 (9th Cir. 2001), we held that a district court may levy sanctions pursuant to its inherent power for "willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 989 (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980)). "[S]anctions are available if the court specifically finds bad faith or conduct tantamount to bad faith." *Id.* at 994.

Dahlberg argues that the district court made no such finding and even accepted Dahlberg's explanation that the violation was "inadvertent."

We agree that the district judge never made a finding of bad faith or conduct tantamount to bad faith and that the district judge said that he understood that Dahlberg's conduct was "inadvertent." However, the judge also made an explicit finding that notwithstanding Dahlberg's explanation, he still violated his own protective order, a fact which Dahlberg does not dispute.

Thus, it is clear that a "willful" violation of a court order does not require proof of mental intent such as bad faith or an improper motive, but rather, it is enough that a party acted deliberately.

The language in *Fink* makes clear that a district court has the inherent power to sanction for: (1) willful violation of a court order; or (2) bad faith. A determination that a party was willfully disobedient is different from a finding that a party acted in bad faith. Either supports the imposition of sanctions.

Here, Dahlberg knew that the protective order was in place and that filing without redacting the confidential information constituted a violation. Sanctions are especially appropriate in this case because Dahlberg, himself, sought the protective

order, making, as the district court said, the plaintiff "jump through hoops" to comply. Dahlberg characterizes the failure to comply with the sanctions order as "inadvertent" but what he really means is that on the day of the filing, he realized that compliance with the protective order would cause him additional time and work, and he *chose* not to comply.

**[28]** A lawyer cannot seek an order requiring opposing counsel to comply with the order, but then violate it, himself, with impunity. The award of attorney's fees for Dahlberg's failure to obey his own protective order was an appropriate remedy. The district court was well within its discretion to impose sanctions against Dahlberg.[12]

## VIII. CONCLUSION

We reverse the district court's grant of summary judgment to Mickell on the issue of whether Mickell's act of sending "care of" letters to debtors' employers violates the FDCPA and we also reverse the denial of class certification on that issue. We affirm the district court's grant of summary judgment to Mickell on the issue of whether the contents of the letter violates the FDCPA. We affirm the sanctions award. We remand for consideration of whether the Rule 23(b) fac-

---

[12]Lemberg argues that the district court's sanctions award did not adequately compensate him for the time spent in complying with the protective order. Dahlberg responds that Lemberg's failure to file a notice of cross appeal amounts to a waiver of this argument. But, because "the requirement of a notice of cross-appeal is a rule of practice, which can be waived at the court's discretion" Lemberg's failure to file a notice of cross appeal does not act as an automatic jurisdictional bar to the court's consideration of his request. *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1298 (9th Cir. 1999). However, Dahlberg never waived the protective order, but instead accidentally violated it, and thus Lemberg's compliance remained mandatory. In addition, there is nothing to suggest that a sanctions award had to directly correlate with the additional time Lemberg spent on this task. The district court has wide discretion in crafting a sanctions award and the district court's nominal reduction of which Lemberg complains was not an abuse of discretion.

tors are satisfied and for a proper lodestar calculation of attorney's fees. Evon shall recover the costs of her appeal.

AFFIRMED IN PART, REVERSED IN PART and REMANDED with instructions that the case be reassigned on remand.

---

NOONAN, Circuit Judge, dissenting:

Debt collectors have never been popular. Nonetheless they perform a necessary societal function. The Federal Reserve estimates that in the United States today unpaid consumer debts amount to over two and one-half trillion dollars. http://www.federalreserve.gov/realeases/g19/Current/. If debts are not paid, credit will dry up. To keep our debt-prone society functioning, we must respect the rights of the debt collector.

The statute at issue here is precise. The text is set out in the majority opinion. After setting out the text, the majority ignores it to create a statute more to its taste.

The text itself forbids "a debt collector" to "communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor , the attorney of the creditor, or the attorney of the debt collector." The critical verb is "communicate."

The majority supposes that a debt collection letter addressed to a debtor at his place of employment is a communication made to an indefinite number of persons in the employer's business: Mickell "knew or could reasonably anticipate that a letter sent to a class member's employer would be opened and read by someone other than the debtor." This flat factual statement is offered by the majority without reference to any authority. Is there a general rule that letters

to a person in care of the person's employer will be opened? Nothing in my experience suggests that such is the rule or common practice in the United States. The majority invents a custom to confirm its conclusion.

It is additionally doubtful that a letter addressed to A but opened by B can be described as a communication to B. Communications are purposeful. What is written to be read by A is not a communication to B.

A comparison of the majority's holding in this case with what the majority cites from the Staff Commentary of the Federal Trade Commission illustrates how far the majority departs from any existing authority in its ban on collection letters in care of a business address. The majority completes its case by endorsing a reductio ad absurum offered by Evon: What would prevent a collector from sending a collection letter in care of a parent or neighbor? The answer is: common sense. When business practice defects from common sense, it will be time to take seriously the majority's hypothetical.

*The defective class*. The majority reverses the district court and holds Evon to be an adequate representative of a class of allegedly abused debtors. The class is comprised of persons like Evon who have been sent collection letters in care of their employers. They have no better case than Evon. The class has not been injured.

*Attorney's fees*. As a corollary of reversing the judgment of the district court, the majority invites it to enhance the award of attorney fees. As a corollary of my dissent, I conclude that remand on this point is unnecessary.

*Reassignment*. The majority acknowledges that unusual circumstances justifying reassignment to a different district judge rarely exist, but nonetheless make the reassignment here, taking the trial judge to task for his comments on the

character of this lawsuit. I cannot join in this reassignment or in the assessment of the care exercised by the district judge.